IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PRESTON REGISTER, as Personal Representative of the Estate of DANNY RAY JONES,<br><br>     Plaintiff,<br><br>vs.<br><br>BLAKE H. SMIDT, Police Officer for the Ogallala, Nebraska Police Department, in his individual capacity,<br><br>     Defendant. | 4:23-CV-3036<br><br>MEMORANDUM AND ORDER |

  The plaintiff, Preston Register, representing the estate of Danny Ray Jones, alleges that the defendant, Blake H. Smidt, violated Jones' constitutional rights. *See* filing 1. The plaintiff's sole claim against Smidt is for malicious prosecution, based on the allegation that Smidt caused Jones to be arrested without probable cause in violation of the Fourth and Fourteenth Amendments. The plaintiff brings this lawsuit under 42 U.S.C. § 1983.

  This matter is before the Court on Smidt's motion for summary judgment on the basis of qualified immunity. Filing 51. The motion will be granted. The plaintiff has also moved to strike parts of Smidt's reply brief. Filing 65. That motion will be denied.

## I. STANDARD OF REVIEW

  Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the

initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id*.

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id*. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id*. But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id*. In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## II. BACKGROUND

In June 2018, Danny Ray Jones, a black over-the-road truck driver, stopped for gas at a Sapp Brothers truck stop in Ogallala, Nebraska. Filing 51-2 at 2. When Jones tried to buy gas inside, the truck stop had issues processing his payment. A white trucker, David Magistrale, came inside, and "was really

upset." *See* filing 58 at 28. Magistrale was parked next to Jones' truck, and he was frustrated that Jones was taking so long to move.

The video surveillance footage provided by Smidt (defendant's exhibit 12) begins, in relevant part, with Jones heading to his truck. The footage does not have any audio. The footage shows a physical fight between Magistrale and Jones. Magistrale pulled Jones into the open parking lot. Jones appeared to have the upper hand; he pushed Magistrale to the ground and kicked him, then ran to his truck to leave. Magistrale detached the brake line on Jones' truck to stop him from leaving. Jones got out of his truck to reattach the line and tried to leave again, but Magistrale again pulled the line. Jones fixed it again. Then, Magistrale was carrying a crowbar or pipe-like object, walking towards Jones' driver-side door. Magistrale used the object to detach the brake line again.

Magistrale wandered around with the object, near his own truck and then in the open parking lot. Jones looked out his door, and then the video shows both men are pointing and arguing. An employee came out and appeared to speak with Magistrale. Jones reattached his brake line while Magistrale spoke to the employee, and Jones again tried to leave. Magistrale pulled the brake line again, in front of the employee. The employee then went back inside. Magistrale and Jones exchanged some more words, and then Jones was able to reattach his brake line and leave.

*Officer Smidt's Investigation*

A truck stop employee called 911 to report the fight. *See* filing 51-2 at 3; defendant's exhibit 10. The employee told the dispatcher that there were two truckers in a "disagreement," one black and one white, and they were starting to physically fight on the fuel island. The employee said that she and other employees didn't want to get in the middle of it. Exhibit 10.

3

Officer Smidt responded to the 911 call. Jones was gone by the time Smidt arrived. Smidt turned his body camera on before he spoke to Magistrale. Smidt asserts that Magistrale was the first person he spoke to about the incident. *See* filing 51-2. However, at the beginning of Smidt's body camera footage, a dispatcher can be heard saying:

> 1059 watch for Ogallala. 1059 watch for Blue Kenworth Semi [inaudible] trucking on the side, [inaudible] trucking on the side. Black male driver. Involved in assault. Ogallala.

Defendant's exhibit 13. Somehow, the dispatcher knew that Jones had left the scene and the type of truck he was driving, even though that information was not relayed in the 911 call.

Smidt noted that Magistrale looked like he had been cut—there was blood on his shirt, and there were lacerations across his stomach. Magistrale described the assault and identified Jones as the aggressor. *See* filing 58 at 34-35. Smidt asked if Jones cut him with a knife; Magistrale said he did not know. Smidt then went inside to obtain the security footage. However, the manager was not there, so he was not allowed to review the footage. Smidt spoke to the manager on the phone. He asked if the employees could provide Jones' drivers license or other information. Filing 58 at 36. Smidt told the manager that he believed Jones "cut this other guy, like he took a knife out and sliced his stomach. . . . I would love to get this guy to jail." Filing 58 at 36-37.

Smidt then obtained Jones' information from one of the employees. The employee, unprompted, gave some information about the incident. The employee said that Magistrale came inside and "was really upset." Filing 58 at 38. Smidt asked whether Jones was driving a blue truck, and he asked for

4

information about Jones. He asked if anyone tried to break up the fight; the employee told him no. Smidt did not ask any other questions, such as whether anyone witnessed the fight or saw Jones with a weapon. *See* filing 58 at 37. The conversation with the truck stop employee lasted about 30 seconds. Smidt went back outside and took photographs of Magistrale's injuries. He spoke to Magistrale more about the incident.

This concluded Smidt's investigation of the altercation between Magistrale and Jones. The investigation, as captured by the body camera footage, lasted a little more than 20 minutes. Smidt believed Jones committed second-degree assault. *See* Neb. Rev. Stat. § 28-309(1)(a). He called dispatch to issue a broadcast to stop and arrest Jones, known as a "BOLO" ("be on [the] lookout"). The broadcast was transmitted as follows:

> Caution armed knife possible handgun investigate assault Ogallala interchange 1439 Mountain June 02 black male 6-2 180 black hair brown eyes driving blue Kenworth semi DNA Trucking on the side.

Defendant's exhibit 5.

Jones was arrested shortly after 4 p.m. in Colorado. Smidt later obtained an arrest warrant, based on the results of his investigation. Filing 51-2 at 6. Only after the arrest warrant was signed could Smidt review the security footage. Jones was prosecuted in Keith County, Nebraska, for the alleged assault. Ultimately, a jury of his peers returned a verdict of not guilty.

### III. DISCUSSION

The plaintiff is suing Smidt for malicious prosecution under § 1983. *See* filing 1; filing 21 at 12. The plaintiff must prove that criminal proceedings were

5

instituted without probable cause; the motive in instituting the suit was malicious; and the prosecution terminated in the acquittal of the accused. *See, e.g., Thompson v. Clark,* 596 U.S. 36, 44 (2022). The parties agree that Jones was acquitted, but disagree as to the other two elements. *See* filing 51-1 at 7.

Smidt argues that he is entitled to qualified immunity because he had at least arguable probable cause before causing Jones to be arrested. *See* filing 51-1 at 7. The legal standard for qualified immunity was discussed in depth in the Court's prior memorandum and order:

> Qualified immunity shields police officers performing discretionary functions from liability for conduct that does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Parker v. Chard,* 777 F.3d 977, 979 (8th Cir. 2015); *see Messerschmidt v. Millender,* 565 U.S. 535, 546 (2012); *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). In determining whether a police officer is entitled to qualified immunity, the Court asks (1) whether the facts alleged establish a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the violation, such that a reasonable officer would have known his actions were unlawful. *Laney v. City of St. Louis,* 56 F.4th 1153, 1156 (8th Cir. 2023); *Johnson v. Phillips,* 664 F.3d 232, 236 (8th Cir. 2011); *see Parker,* 777 F.3d at 980.

Filing 21 at 12. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *Walker v. City of Pine Bluff,* 414 F.3d 989, 992 (8th Cir. 2005). An officer who makes an objectively reasonable mistake is

6

entitled to immunity. *Id.* So, an officer need only have "arguable probable cause" to be immune from suit. *See id.*

## "BOLO"

The plaintiff's theory of this case is that Smidt issued a "BOLO," a broadcast directing all officers to arrest a certain person, before he began his investigation, and thus there was no probable cause to support the arrest. Smidt has attempted to clarify in his reply brief that there was a "1059 Watch For" that can be heard at the beginning of the body camera footage. That message was undeniably broadcast before Smidt began his investigation. Smidt asserts that the evidence indicates the "BOLO" was only transmitted after Smidt completed his investigation.

The plaintiff has moved to strike some of Smidt's reply on the grounds that it introduces new arguments about the distinction between the "1059 Watch For" and the "BOLO." However, not only did Smidt distinguish between the broadcasts in his statement of facts, *see* filing 51-2 at 5-6, Smidt's reply properly responds to the plaintiff's characterization of the evidence. That is exactly the purpose of a reply brief. The plaintiff's motion will be denied.

*Even if* Smidt had issued a "BOLO" or some other broadcast calling for Jones' arrest before beginning his investigation, the plaintiff's case is based on malicious prosecution. In the § 1983 context, that claim relates to an unconstitutional seizure pursuant to legal process. *See Thompson,* 596 U.S. at 42. The plaintiff must show that the *arrest warrant* was issued without probable cause, not that the arrest itself was so unsupported. It's undisputed that Smidt did not obtain the warrant until after he spoke to Magistrale and the gas station employee. *See* filing 51-2 at 6. If Smidt's investigation was adequate, then the warrant was supported by probable cause.

The (disputed) allegation that Smidt called for Jones' arrest before beginning his investigation might be relevant to the adequacy of his investigation and the potential malicious motives. *See Dunn v. City of Fort Valley,* 464 F. Supp. 3d 1347, 1368 (M.D. Ga. 2020). But even if Smidt issued the broadcast prior to beginning his investigation, this fact alone cannot defeat Smidt's motion for summary judgment because the plaintiff has the burden to prove that the arrest warrant issued without probable cause, based on an inadequate investigation.

*Arguable Probable Cause*

As explained above, Smidt is entitled to qualified immunity if he had "arguable" probable cause to support Jones' arrest. Arguable probable cause does not exist where "minimal further investigation" would have exonerated a suspect. *Ross v. City of Jackson,* 897 F.3d 916, 921 (8th Cir. 2018). However, an officer need not conduct a "mini-trial" before making an arrest. *Id.* A court must "analyze the weight of all the evidence—not merely the sufficiency of the incriminating evidence" to evaluate probable cause and determine whether a reasonable officer could have believed a crime had been committed. *Kuehl v. Burtis,* 173 F.3d 646, 650 (8th Cir. 1999). It's well-established that officers are generally entitled to rely on information supplied by the (perceived) victim of a crime, absent some indication that the information is not reasonably trustworthy or reliable. *See Clay v. Conlee,* 815 F.2d 1164, 1168 (8th Cir. 1987); *Gilmore v. City of Minneapolis,* 837 F.3d 827, 832-33 (8th Cir. 2016); *Fisher v. Wal-Mart Stores, Inc.,* 619 F.3d 811, 816-17 (8th Cir. 2010); *Joseph v. Allen,* 712 F.3d 1222, 1227 (8th Cir. 2013); *Peterson v. City of Plymouth,* 60 F.3d 469, 474-74 (8th Cir. 1995).

8

To assess adequacy of Smidt's investigation, what *actually* happened between Magistrale and Jones is immaterial: The crux of the analysis is what evidence Smidt actually considered; what evidence he should have, but didn't, consider; and whether the weight of that evidence supports a belief that Jones committed a crime. *See Ross*, 897 F.3d at 922; *Kuehl*, 173 F.3d at 650; *Hill v. Scott*, 349 F.3d 1068, 1073 (8th Cir. 2003).

Smidt's assessment of probable cause was based on the 911 call, his interview with Magistrale, and a brief conversation with a truck stop employee. He asked to review the surveillance footage, but couldn't until a manager was present, which did not happen until after the arrest warrant was signed. Neither Smidt's conversation with the truck stop employee nor the 911 call support a conclusion that Jones used a weapon and committed second-degree assault. Rather, the employee and the 911 caller merely indicated that a fight had occurred, and the employee identified Magistrale, not Jones, as the aggressor. The only evidence Smidt had that Jones committed a crime came from Magistrale. Smidt said on the body camera footage that his "common sense" told him Jones used a knife to cut Magistrale. Filing 58 at 44, 52.

Magistrale said that Jones came at him after the two had a verbal disagreement. *See* filing 58 at 35. Magistrale also said he thought Jones may have had a gun. Filing 58 at 35. The plaintiff has not identified any circumstances that would indicate Magistrale was untrustworthy in his description of what happened. *See Clay*, 815 F.2d at 1168. Therefore, Smidt was entitled to rely on the information that Magistrale provided, and he could draw inferences from Magistrale's version of events. *See id*.

An officer cannot ignore plainly exculpatory evidence. For example, in *Kuehl*, police responded to a 911 call regarding a physical altercation between a man and a store owner at a shopping mall. *See id.* at 648. When the officer

9

arrived, he was told that the store owner hit the man. The officer spoke to the man and observed bruising on his face. Several witnesses corroborated the man's story. The officer then spoke with the store owner "for only about twenty seconds." *Id.* The owner said that the man was the aggressor, and he had made her fear for her safety. She also had bruising on her face. A witness corroborated the owner's story, but the officer ignored the witness. The *Kuehl* court determined that the officer was not entitled to immunity because he failed to investigate why the altercation occurred, and he ignored circumstances that would have provided such an explanation. *See id* 648-49, 651.

The facts here are similar, but distinguishable, from *Kuehl*. Most notably, Jones left the scene and could not be interviewed. *See also* Ross, 897 F.3d at 922. No witnesses jumped to defend Jones, and none of the evidence available to Smidt plainly contradicted Magistrale's version of events. While Smidt didn't seek out any exculpatory evidence, the plaintiff has failed to identify what exculpatory evidence existed that Smidt failed to investigate, or why the evidence Smidt collected would have or should have exonerated Jones.

One reason the Court denied Smidt's motion to dismiss on the basis of qualified immunity was the plaintiff's allegation that if any of the truck stop employees had been asked, they would have identified Magistrale as the person who should be arrested. *See* filing 1 at 11; filing 21 at 15. However, the plaintiff has not substantiated this allegation.

The video surveillance footage shows an employee talking to Magistrale during the fight. But it's unclear from the footage, which does not have any audio, what the employee or Magistrale said. It's unknown what the employee would have told Smidt had he been interviewed. And when Smidt asked if anyone had tried to break up the fight, the employee he spoke to said no. Based

on the record before the Court, there's no way that Smidt would have known to interview the employee who spoke to Magistrale during the fight.

The plaintiff has not put forward *any* evidence of what Smidt would have discovered had he completed further investigation—*i.e.*, sworn testimony from employees that, if asked, they would have told Smidt that Jones did not commit a crime, or any evidence that Smidt should have known Magistrale's description of events was unreliable. See *Gilmore*, 837 F.3d at 833. To evaluate probable cause, the Court must analyze the weight of all the evidence, including both exculpatory and incriminating evidence. See *Kuehl*, 173 F.3d at 650. The record before the Court lacks any evidence from which a reasonable juror could find that Smidt ignored exculpatory evidence. The plaintiff has failed to meet his burden on summary judgment. The undisputed facts indicate Smidt had at least *arguable* probable cause to obtain a warrant for Jones' arrest, and he is therefore entitled to qualified immunity.

IT IS ORDERED:

1. The defendant's motion for summary judgment (filing 51) is granted.

2. The plaintiff's motion to strike (filing 65) is denied.

3. The plaintiff's case is dismissed.

4. A separate judgment will be entered.

Dated this 16th day of April, 2025.

BY THE COURT:

John M. Gerrard
Senior United States District Judge

12